IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA TRAUDT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-02703-M |
| | § | |
| DATA RECOGNITION CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment (ECF No. 26), filed by Defendant Data Recognition Corporation. On April 27, 2023, the Court heard argument on the Motion. In addition to the reasons stated on the record, the Motion for Summary Judgment is **GRANTED** for the reasons below.

### I. Factual and Procedural Background

The Complaint alleges that Plaintiff Christina Traudt, a white woman, began working for Defendant Data Recognition Corporation in January 2018, as an assessment solution representative; Plaintiff alleges her responsibilities included "planning, developing, and implementing strategic sales in her assigned five state territory." Compl. ¶ 4.01.

Plaintiff alleges that Defendant represents to its sales force that "they will be paid through a base salary plus a commission-like incentive plan, but indicates in the fine print that no contractual rights attach to the plan." *Id.* ¶ 4.02. Plaintiff alleges that, in November 2019, she should have been paid $165,000 in commissions under Defendant's incentive plan, but instead

she was paid only $15,000.  After complaining about the reduction, Plaintiff alleges she was told "leave it alone for now or you won't have a job." *Id.* ¶ 4.04.

Plaintiff alleges that she had commissions due in Spring 2020, which were deferred due to COVID, and then she was terminated in July of 2020, which the Defendant claims was due to COVID-related corporate layoffs.  Compl. ¶¶ 4.04–.05.  Plaintiff alleges that she subsequently learned that another woman, Gina Davis, was also not paid according to the plan and was likewise terminated, while three white males were not terminated and were compensated according to the plan: Ryan Nelson, Robert Lagrassa, and Jon Weiss.  *Id.* ¶ 4.06.

Plaintiff Christina Traudt asserts two claims, violation of the Equal Pay Act, and gender discrimination, in violation of "Title VII and/or the Texas Human Rights Act, Texas Labor Code §21.001." *Id*. at 5–7.  Plaintiff's gender discrimination claim is based on her allegations regarding compensation, wrongful termination, and retaliation.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*., 919 F.2d 301, 303 (5th Cir. 1990).  However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the summary judgment movant has met its burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

### III.  Analysis

Defendant moves for summary judgment on all of Plaintiff's claims. As explained below, the Court concludes that summary judgment is appropriate because Plaintiff cannot make a prima facie case under the Equal Pay Act or Title VII; and Plaintiff raises no fact question in connection with her retaliation claim.

As a preliminary matter, Defendant objects to portions of Plaintiff's summary judgment evidence, including PX 9, 19, 23, 28, and objects to portions of Plaintiff's declaration as hearsay, speculative, and not based on personal knowledge. At this juncture, the Court determines that it need not resolve Defendant's objections to rule on Defendant's Motion for Summary Judgment. Accordingly, Defendant's objections are **OVERRULED AS MOOT.**

#### a.  Wage Discrimination

Defendant moves for summary judgment on Plaintiff's claims relating to her compensation, arguing that Defendant did not violate the Equal Pay Act or Title VII in connection with Plaintiff's compensation. Defendant also contends that Plaintiff's Title VII claim based on Plaintiff's 2019 compensation is untimely.

The summary judgment record indicates that Defendant paid its sales force, including employees like Plaintiff, according to a salary with an incentive plan, by which each employee had a particular quota goal, and would receive a percentage of a preset award depending on how much of the quota was met. *E.g.*, ECF No. 35 (P. App.) at 153. For example, under her 2018–19 incentive plan, Plaintiff's annual quota was $2,02132,286, and her annual target award was $46,000. If she reached 100% of her quota, she would receive 100% of the $46,000 award; if she did not meet or exceeded the quota, she would receive a certain percentage of the award, as described in the plan. *Id.* David Seitter, Defendant's Senior Vice President of Sales, testified at his deposition that the annual quota and target awards could change year to year, and differed for each employee according to the prior year's results, new opportunities, and company growth. ECF No. 27 ("D. App") at 43. For example, in the 2017–18 plan, Plaintiff's annual quota was $1,795,854, and her target award was $35,420. P. App. at 18.

To establish a prima facie case under the Equal Pay Act, Plaintiff must show that "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Badgerow v. REJ Prop., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020). Once a prima facie case under the Equal Pay Act is established, the burden shifts to the defendant to show that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor than sex." *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001). Generally, a Title VII claim of wage discrimination, assuming it is timely, parallels a claim for violation of the Equal Pay Act. *Id.* A plaintiff establishes a prima facie case

of wage discrimination under Title VII when she shows that she is a member of a protected class who "was paid less than a non-member for work requiring substantially the same responsibility." *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). To make this showing, Plaintiff must offer evidence that her circumstances were "nearly identical to those of a better-paid employee who is not a member of the protected class." *Id*. at 523.

The Court concludes that Plaintiff has not established a prima facie case under the Equal Pay Act or for wage discrimination based on gender under Title VII. As Plaintiff conceded during the hearing, the structure of Defendant's incentive plan, as written, is not inherently discriminatory based on gender. In addition, Plaintiff provided no evidence of a male comparator in a position requiring equal skill, effort, and responsibility under similar working conditions getting paid more than Plaintiff. Plaintiff points to three male employees in support of her wage discrimination claims—Ryan Nelson, Robert Lagrassa, and Jon Weiss—but the record does not indicate, and Plaintiff does not show, that any of these alleged male comparators were paid more than Plaintiff under the plan.[1]

Instead, Plaintiff clarified during the hearing that her Equal Pay Act and discrimination claims relating to her compensation are based solely on her allegations regarding her 2019 commissions. Specifically, Plaintiff argued that she should have been paid commissions in relation to the sale of a feature, Form A, of the "LAS Links" product to the Texas Education Agency. Plaintiff further clarified her theory of discrimination, arguing that, even though

---

[1] The record indicates that Jon Weiss and Robert LaGrassa, who had the same "Assessments Solution Consultant" job title as Plaintiff, had the same $46,000 annual target award for their respective 2018–19 incentive plan, but higher annual quotas than Plaintiff, suggesting that these comparators would have actually had to make more sales than Plaintiff to be paid the same amount under the incentive plan. P. App. at 227; D. App. at 234–48. The record indicates that the third alleged comparator, Ryan Nelson, had a different job title than Plaintiff in "Inside Sales." P. App. at 227. Plaintiff does not point to any evidence indicating that, despite this difference in job title, Plaintiff and Mr. Nelson were in the same position requiring equal skill, effort, and responsibility, such that Mr. Nelson could be considered a suitable comparator. Regardless, the record indicates that Mr. Nelson had both a higher combined annual quota and lower annual target award than Plaintiff. *See* D. App. at 234–38.

commissions she contends should have been paid to her were paid to another woman, that "diversion" of her commissions constitutes gender discrimination because men in the department did not experience any similar diversion of their commissions.

The Court concludes that Plaintiff has not created a genuine issue of material fact that her 2019 commission payment constitutes gender discrimination. Plaintiff's declaration explains that another woman in the sales organization—Nina Trigger, the EL Business Development Manager—received the credit and commissions Plaintiff believed she and another Assessment Solutions Consultant, Gina Davis, were entitled to for sales of the LAS Links Form A product. *See* P. App. at 5 ¶ 13 ("There was never any mention of any of our commission money going to Nina. . . ."), 10 ¶ 23 ("We were certainly never told that all of our hard-earned commissions were to be paid to Nina . . . ."); *see also id.* at 161, 163 (same). Accordingly, Plaintiff provides no evidence that her circumstances were nearly identical to those of a better-paid employee who is not a member of the protected class, because the alleged "better-paid employee" is a member of the same protected class.

In addition, Plaintiff provides no evidence in support of her diverted commissions theory, *i.e.*, that similarly situated male employees within Defendant's organization did not have their commissions diverted to another employee as Plaintiff's commissions allegedly were. As an initial matter, Plaintiff does not show a fact question as to whether she was entitled to commissions for sales of the LAS Links Form A product; on the contrary, the summary judgment record indicates that Nina Trigger was assigned the LAS Links Form A project, and appropriately received commissions associated with securing that contract.[2] Accordingly, given

---

[2] The summary judgment record indicates that, because the LAS Links Form A product was being considered by the Texas Education Agency as a mandatory product to be used by all school districts across the state, the project was assigned to someone in corporate, specifically, Nina Trigger, the English Language Business Development Manager, who managed the project, led a team of 20 to 30 people in drafting Defendant's response to the Texas Education

that Plaintiff was never entitled to commissions for the LAS Links Form A product sales, Plaintiff has not established there were commissions owed to Plaintiff but paid to someone else. Moreover, the evidence provided by Defendant indicates that, on occasion, both male and female employees received "adjustments" to their total sales numbers prior to incentive awards being calculated. *See* D. App. 119 (indicating that employee Darrin Williamschen received an adjustment to his sales total for every quarter of 2019). As a result, to the extent Plaintiff argues her commissions were improperly diverted, she has not shown that such diversions happened only to commissions earned by female employees.

Thus, summary judgment is appropriate on Plaintiff's Equal Pay Act claim and claim for discrimination under Title VII based on compensation.[3]

---

Agency's Request for Proposal ("RFP"), solicited references for the product from Assessment Solutions Consultants, such as Plaintiff, and eventually made a presentation to the Texas Education Agency in support of Defendant's pitch for the state-wide contract. *See, e.g.*, D. App. at 52–53, 83, 116, 122, 143–45, 179–93. The record also indicates that Plaintiff's quota for 2018–19 was decreased to account for the LAS Links Form A product, in recognition of Plaintiff's anticipated decrease in sales related to Form A which were being assigned to Nina Trigger pursuant to pursuit of the state-wide contract. *Id.* at 51. Plaintiff and other Assessment Solutions Consultants remained eligible to sell other, non-mandatory features of LAS Links to school districts, including Forms B, C, and D. *Id.* at App. 55–57, 140–41. The only evidence Plaintiff provides in support of her belief that she would be entitled to credit for Form A sales is her declaration, in which she explains that she contributed to Defendant's RFP response and identified customers already using the LAS Links program. P. App. at 3–5. Plaintiff further stated that she had a "clear expectation" she would be paid for LAS Links sales if the Texas Education Agency contract was awarded to Defendant. *Id.* at 6. The Court concludes that, even assuming that Plaintiff's statements in her declaration constitute competent summary judgment evidence, Plaintiff's declaration does not contradict Defendant's evidence indicating that Nina Trigger was entitled to credit for the Form A contract, and thus does not create a fact question as to whether Plaintiff was entitled to commissions based on sales of the LAS Link Form A product pursuant to that contract.

[3] Because the Court concludes that Plaintiff has not established a prima facie case of Title VII discrimination based on compensation, the Court need not resolve the question of whether Plaintiff's claim was timely. However, the Court notes that Plaintiff filed her EEOC charge on January 7, 2021, and accordingly, any Title VII claims based on activity occurring before March 13, 2020—*i.e.*, 300 days before her charge was filed—are untimely. Plaintiff argues that her Title VII claim is timely because there was a chance that Plaintiff could still be paid commissions for 2019 until she was terminated in July of 2020, and thus the statute of limitations did not begin to run until July 2020. For support, Plaintiff points to her own declaration, in which she posits that her supervisor "left open" the question of whether she might be paid her requested commissions in the future. P. App. at 156. Plaintiff acknowledges that she received notice of her 2019 commissions in November of 2019. She did not seek an appeal of her commission payment, as provided for under the incentive plan. *See id.* at 15. During the hearing, Plaintiff was unable to point to any evidence in the record indicating that Defendant had represented to Plaintiff that it was continuing to weigh whether to pay Plaintiff's 2019 commission payment after March 13, 2020. Accordingly, in the alternative, the Court finds that even if Plaintiff has established a prima facie case of discrimination under Title VII based on her 2019 commission payment, Plaintiff's claim is not timely, because the decision to pay Plaintiff's 2019 commission occurred in November 2019, and there is no evidence that Defendant was continuing to consider the commission payment during the limitations period.

### b. Termination

Defendant moves for summary judgment on Plaintiff's termination claim, arguing that Plaintiff does not make a prima facie case that her employment was terminated because of her gender, and even if she did, Plaintiff has not demonstrated a fact question as to whether Defendant's stated reason for her termination—a COVID-related reduction in force, in which Plaintiff was selected due to her relative seniority and employee overlap in Texas—is pretext for discrimination.

To establish a prima facie case of discrimination, the plaintiff must make a showing that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. *Id.* If the employer meets its burden, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose; to carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer. *Id.*

The Court finds that summary judgment is appropriate because, regardless of whether Plaintiff can establish a prima facie case of discrimination,[4] Plaintiff has not rebutted

---

[4] Plaintiff argues that she was treated less favorably than "[w]hite male employees with substantially lower sales [who] had not been fired," pointing to Ryan Nelson, Robert Lagrassa, and Jon Weiss. ECF No. 34 at 10. For support, Plaintiff points to her own declaration and PX-9, excerpts from an Excel spreadsheet for the 2018 and 2019 sales reports. Defendant responds that, even after Plaintiff and Gina Davis were laid off as part of the reduction in force, the sales team remained majority female, and objects to PX-9 as incomplete. In addition, as discussed, Ryan Nelson is not in the same position as Plaintiff, and is thus arguably not a "similarly situated" employee. Plaintiff argues that Defendant created and staffed a new "Brand Ambassador" role to replace her, but as Defendant points out, glosses

Defendant's nondiscriminatory reason for Plaintiff's termination. Defendant states that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, namely that due to a loss of revenue and business caused by the COVID-19 pandemic, Defendant implemented a reduction in force in the summer of 2020, resulting in laying off more than fifty employees, including Plaintiff. *See* D. App. 94 ("Following significant contract reductions and revenue shortfall due to COVID-19 [Defendant] is reducing select positions."). Defendant represents that the decision to include Plaintiff in the reduction in force was due to redundancy in staff and overlap in Texas, and the relative seniority of employees in Texas.[5] Plaintiff was hired in 2018, and Gina Davis, the other woman from Texas included in the reduction in force, was hired in 2014; the two women remaining after the reduction in force were hired in 2006 and 2007, respectively. P. App. at 1, 158; D. App. at 77–78.

In response, Plaintiff argues that Defendant's stated reasons for her termination are "unworthy of belief," and points to the fact that she allegedly had better performance figures than male employees who were not terminated. However, Defendant's burden to articulate a legitimate reason for its decision "is only one of production, not persuasion," and involves "no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). In addition, to survive a motion for summary judgment, "the plaintiff must produce substantial evidence of pretext." *Hardison v. Skinner*, 489 F. Supp. 3d 536, 547 (W.D. La. 2020) (citing *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 402–403 (5th Cir. 2001)).

---

over the fact that the person hired for the Brand Ambassador role was a woman. D. App. at 86 ("Q. Who did DRC end up . . . hiring as the replacement - - or as the brand ambassador for Texas? A. Felicia Taylor. . . . Q. Is she a woman? A. She is.").

[5] Specifically, Defendant's Senior Vice President of Sales testified during his deposition that, prior to the reduction in force, Defendant had four employees in Texas, all women. D. App. at 77–78. Plaintiff and another woman, Gina Davis, were chosen for the reduction in force because the two other women, Nina Trigger and Genevieve Olvera, had been with the company since 2007 and 2006, respectively, and could absorb the responsibilities of the laid-off employees because they had been in sales, supported LAS Links and other products, and had relationships in the state of Texas. *Id.* He further testified that other regions lacked such overlap of employees. *Id.*

Defendant states it considered factors other than the relative sales performance of employees when deciding who to include in the reduction in force, namely geographical overlap relative seniority, and accordingly the fact that Plaintiff may have sold more than male employees who were not terminated is irrelevant. Moreover, Plaintiff conceded during the hearing that she provided no information regarding the relative seniority of the employees who were and were not terminated, and thus has not carried her burden to rebut Defendant's stated nondiscriminatory basis for her termination. Summary judgment is thus appropriate on Plaintiff's Title VII termination claim.

### c. Retaliation

Defendant moves for summary judgment on Plaintiff's retaliation claim, on the grounds that because Plaintiff does not identify any protected activity that she engaged in before her employment was terminated, she does not establish a prima facie case of retaliation. To establish a prima facie case of retaliation, the Plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556–57. "Summary judgment is appropriate if the plaintiff cannot support all three elements." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). An employee has engaged in activity protected by Title VII if she "has opposed any practice" that is unlawful under Title VII, or if she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *See* 42 U.S.C.A. § 2000e-3(a).

In her response, Plaintiff does not directly identify the specific protected activity she supposedly engaged in prior to being terminated, and instead analyzes her retaliation claim in

conjunction with her discussion of a prima facie case of discrimination. *See* ECF No. 33 at 21–22. During the hearing, Plaintiff's counsel argued that her complaints to management regarding her 2019 commission constitutes protected activity under Title VII, pointing to her declaration and the declaration of Gina Davis for support. *See* P. App. at 8–9, 163.

However, neither Plaintiff's nor Ms. Davis's declaration indicate that Plaintiff's complaints referenced any alleged unlawful employment practice, as opposed to simply complaining about her commission generally. In her declaration, Plaintiff states she "inquired about where the rest of my hard-earned money was," and then "confronted Bill about it during a weekly Texas sales meeting . . . I pointed out . . . that everyone else on the sales team had been paid according to the Plan." P. App. at 8–9, ¶ 19. Plaintiff states that she was told by her supervisor, Bill Bernys, to "leave it alone for now or you won't have a job." *Id.* Ms. Davis's declaration recites similar facts. *Id.* at 163 ("As the weeks went by and we didn't receive our full commissions, Christina confronted Bill about it during a weekly phone call I was also on.").

Even assuming that these declarations constitute competent summary judgment evidence, Plaintiff's complaint about her commissions did not reference any unlawful discrimination or express the view that men were receiving their full commissions while women were not. Moreover, Plaintiff contends that she pointed out that "everyone else" had been paid according to Defendant's incentive plan, and the summary judgment record and Plaintiff's own deposition testimony indicates that the sales team included other women. *See* P. App. 227 (organizational chart); D. App. 6 ("[T]here were several men and several women on the team."). Put differently, the summary judgment record does not indicate that the "everyone else" referenced in Plaintiff's complaint were solely men, so as to suggest an inference that Plaintiff's complaint was really a veiled complaint about sex discrimination.

Absent a fact issue that she engaged in a specific protected activity—such as complaining about unlawful discrimination, reporting on discrimination, *etc.*—there can be no claim for retaliation. *See Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (citing cases) ("We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."). Summary judgment on Plaintiff's retaliation claim is warranted for an additional reason, namely that she does not show a causal connection between the alleged protected activity and the adverse employment action. Plaintiff argued at the hearing that the complaint to Bill Bernys recited in her declaration would have occurred in November or December 2019, but her employment was not terminated until July 2020. The Fifth Circuit has confirmed that temporal proximity alone is "insufficient to prove but for causation," but when "very close," temporary proximity "can in some instances establish a prima facie case of retaliation." *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation."). The Fifth Circuit has previously recognized that a two-and-a-half-month gap, standing alone, is not sufficiently close to state a prima facie case for causation. *See Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 885 (5th Cir. 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Here, where the gap between Plaintiff's complaint and her termination was at least six months and Plaintiff has no other evidence of causation, Plaintiff has not demonstrated the existence of a causal connection between the protected activity and the adverse employment action. In addition, for the reasons discussed previously, Plaintiff cannot overcome her burden to show that Defendant's legitimate reason for the adverse action—a COVID-related reduction in force—was pretextual.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. The Court will enter a separate final judgment.

**SO ORDERED**.

May 2, 2023.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE